UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

| | |
|---|---|
| ESTATE OF TYRONE MILES, JR., <br><br> Plaintiff, <br><br> v. <br><br> SHERIFF WILLIAM D. SNYDER, as Sheriff of MARTIN COUNTY; the MARTIN COUNTY SHERIFF'S OFFICE and its agents, servants, employees, employers, officers of Martin County, Florida; SAMUEL KIMMEL; and WILLIAM BROWN, individually as Deputy Sheriffs of the Martin County Sheriff's Office; and UNKNOWN DEPUTIES 1-10, individually as Deputy Sheriffs of the Martin County Sheriff's Office. <br> Defendants. | Civil Division <br><br><br> Case No. 2:23-cv-14302-MOORE |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM OF LAW

The Plaintiff, the Estate of TYRONE MILES, JR., through undersigned counsel, hereby files this Response in Opposition to Defendants' Motion to Dismiss and Memorandum of Law, and in support thereof states as follows:

1. Plaintiff filed the instant action ("Complaint") against Defendants on October 6, 2023.

2. Plaintiff's Complaint alleges, among other things, that "[a]s a result of Defendants KIMMEL and BROWN's continued pursuit, decedent TYRONE MILES, JR. lost control of the vehicle, which veered off the road on the north side of SW Kanner Highway, crashing close to the St. Lucie Canal." Compl. at ¶ 18.

3. The Complaint also alleges that "Defendant KIMMEL then accelerated into

1

the rear of decedent's vehicle, initiating a "vehicle immobilization technique' by ramming his push bumper into the rear bumper of the decedent's vehicle[]" and that "Defendant KIMMEL then exited his vehicle as if to pursue decedent TYRONE MILES on foot through the large brush near the canal, obscuring his body camera as he did so." *Id.*

4. Furthermore, Plaintiff alleges that "[b]y their deliberate indifference, Defendants KIMMEL and BROWN, and other unknown Deputy Sheriffs[1] of the Defendant MCSO, **encouraged and caused and/or acquiesced** in the **beating and/or drowning death** of TYRONE MILES, JR." *Id.* at ¶ 34 (emphasis added).

5. The Complaint also states that "Defendants, SHERIFF SNYDER and MCSO, each had a duty to ensure that reasonable measures were taken to provide for the safety of people within MARTIN County, including, the safety of individuals involved in the pursuit, apprehension, and attempted arrest of TYRONE MILES, JR." *Id.* at ¶ 35.

6. Plaintiff also alleges that "Defendant KIMMEL exposed TYRONE MILES, JR. to an unreasonably high risk of fatal harm when he failed to undertake reasonable efforts to prevent TYRONE MILES, JR. from entering the St. Lucie Canal, which he himself claims was too dangerous for him to venture into." *Id.* at ¶ 58.

---

[1] In their motion, Defendants point out that fictitious-party pleading is generally not permitted in federal court. However, they fail to acknowledge that the Eleventh Circuit has "created a limited exception to this rule when the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage.'" *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (citing *Dean v. Barber,* 951 F.2d 1210, 1215–16 (11th Cir.1992)). Plaintiff has met the requirement of this limited exception by pointing out that the fictitious defendants in this case are MCSO deputy sheriffs who were involved in the high speed pursuit of Mr. Miles that morning, and whose specific involvement is fully detailed in the allegations sufficiently pled against them throughout the Complaint. Without the benefit of the video subsequently filed by Defendants in this case identifying which footage belongs to which deputy, Plaintiff was specific as possible with the allegations against these deputies in the absence of anything that could identify the names of these deputies at the time the Complaint was filed. The foregoing is also Plaintiff's argument in response to Defendant's Motion to Quash, [DE14].

7. Additionally, Plaintiff alleges that "Defendant KIMMEL failed to act swiftly to prevent him from getting too far out across the canal to be saved" and that Kimmel "made a conscious decision to do nothing to save TYRONE MILES, JR. from the mortal danger to which Defendant KIMMEL had unreasonably and unconscionably exposed the decedent." *Id.* at ¶ 60.

8. "[An] independent forensic pathologist concluded that decedent TYRONE MILES, JR.'s cause of death was pulmonary edema and congestion from drowning, complicated by unexplained compressive-type blunt force injury of the upper and lower extremities suggesting homicidal drowning." *Id.* at ¶ 32.

## MEMORANDUM OF LAW

### Standard of Review

Defendants correctly point out that on a motion to dismiss, the Court must accept all of the plaintiff's allegations as true. *Hinshon v. King & Spalding,* 467 U.S. 69, 73 (1984). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). However, the Court "must assume the truth of well-pleaded factual allegations, construe them in the light most favorable to the plaintiff, and only then analyze whether they plausibly support an entitlement to relief." *Jackson v. Wal-Mart Stores, Inc.*, 753 F. App'x 866, 868 (11th Cir. 2018). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Iqbal* at 679).

First, Plaintiff properly asserts a claim with facial plausibility by alleging that Defendants Kimmel, Brown, and Unknown Deputies "pursued, assaulted, and severely beat" the decedent, "resulting in multiple blunt force traumatic injuries to his upper arms, writs,

3

right hand, left lower thigh, knee, and upper foreleg, and an acute spinal cord injury and subsequent drowning death." Compl. at ¶¶ 49, 56, 68, and 80.  Plaintiff's Complaint points out that during the pursuit, assault, and beating, Defendant Kimmel obscured his body camera, *id.* at ¶ 20, that he "turned off his body camera's audio before he and other unknown Deputy Sheriffs entered the grassy area near the canal", *id.* at ¶ 25, and that when Kimmel turned on the body camera's audio, "he nevertheless obscured the video from the camera while he, Defendant BROWN, and other unknown deputies of MCSO discussed an apparent footprint found along the canal." *Id.* at ¶ 26.  These allegations present a facially plausible claim that permits the Court to draw the reasonable inference that Defendants Kimmel, Brown, and the unknown Deputies are liable for the misconduct alleged.  These allegations present facially plausible claims of liability for misconduct that explains why the body camera footage filed by Defendants (D.E. 7) may not fully reveal all of Defendants' misconduct as alleged in the Complaint.[2]

Second, assuming *arguendo* that Defendants did not assault, beat, and drown the decedent, the Complaint sufficiently alleges alternative facts that raise plausible claims that still permit this Court to draw the reasonable inference of liability for Defendants' misconduct. As noted in the Complaint, "as a result of Defendants KIMMEL and BROWN's continued pursuit, decedent TYRONE MILES, JR. lost control of the vehicle, which veered off the road on the north side of SW Kanner Highway, crashing close to the St. Lucie Canal." *Id.* at ¶ 18. Additionally, Plaintiff alleges that "[b]y their deliberate indifference, Defendants KIMMEL and BROWN, and other unknown Deputy Sheriffs of the Defendant MCSO, ***encouraged and caused and/or acquiesced*** in the beating ***and/or drowning death*** of TYRONE MILES, JR."

---

[2] *See infra* for the full argument refuting Defendants' contention that the video footage filed with the Court contradicts the allegations in Plaintiff's Complaint.

*Id.* at ¶ 34 (emphasis added.)

In asserting that Defendants Kimmel and Brown "exposed TYRONE MILES, JR. to an unreasonably high risk of fatal harm when [they] failed to undertake reasonable efforts to prevent TYRONE MILES, JR. from entering the St. Lucie Canal", and that "Defendant KIMMEL failed to act swiftly to prevent [decedent] from getting too far out across the canal to be saved…[making] a conscious decision to do nothing to save TYRONE MILES, JR. from the mortal danger to which Defendant KIMMEL had unreasonably and unconscionably exposed the decedent", Plaintiff presents a colorable claim that Defendants' pursuit and subsequent failure to intervene led to Mr. Miles' tragic drowning in a manner that makes them liable for his death.

Likewise, the Complaint sufficiently alleges that Defendants Snyder and MCSO's "failure to comply with […] police training in the appropriate methods of pursuing, detaining, and arresting suspected citizens, and to adequately instruct, discipline and supervise their deputies, agents and/or employees, amounts to a deliberate indifference to the right of persons […] including, TYRONE MILES, JR." *Id.* at ¶ 36.  This liability extends to Snyder and MSCO whether Mr. Miles was assaulted, beaten, and drowned—or whether, alternatively, he was pursued in such deliberate indifference to this Fourth and Fourteenth Amendment rights that it resulted in his untimely death in the St. Lucie Canal.  Taking Plaintiff's allegations as true, and because the Federal Rules of Civil Procedure expressly permit the pleading of both alternative and inconsistent claims, *United Technologies Corp. v. Mazer,* 556 F.3d 1260, 1273 (11th Cir. 2009) (citing Rule 8(d)), this Court should deny Defendants' motion to dismiss.

### Plaintiff's Claims against Defendant Martin County Sheriff's Office Should be Dismissed

As an initial matter, Plaintiff concedes that the claims against Martin County Sheriff's Office as a standalone defendant should be dismissed. These claims are duplicative of the claims alleged against Defendant Sheriff William D. Snyder in his official capacity. *See Dorey v. Hartmann*, No. 5:22-CV-657-WFJ-PRL, 2023 WL 6518961, at *2 (M.D. Fla. Oct. 5, 2023) (citing *Navarro v. City of Riviera Beach*, 192 F. Supp. 3d 1353, 1361 (S.D. Fla. 2016); *Ramirez v. Hillsborough Cnty. Sheriff's Office*, No. 8:10-cv-1819-SDM-TBM, 2011 WL 976380, at *1 (M.D. Fla. Mar. 18, 2011); *Crenshaw v. Lister*, No. 2:03-cv-134-JES-SPC, 2008 WL 151881, at *9 (M.D. Fla. Jan. 15, 2008) (citing the cases for the proposition that a county sheriff is the proper party, rather than the sheriff's office). Accordingly, Plaintiff is prepared to stipulate a motion to dismiss "Martin County Sheriff's Office" as a defendant in this suit.

### Plaintiff's Claims against Individual Defendants do not Contain Duplicative Official Capacity Claims

Notwithstanding the dismissal of MCSO as a named defendant, Sheriff Snyder is properly named in both his official and individual capacities. First, as addressed above, Sheriff Snyder is named in his official capacity "as Sheriff of Martin County", Compl. at 1, and his "responsible for the administration of law enforcement service in MARTIN County, Florida." *Id.*, ¶ 3. Second, Sheriff Snyder is also named individually due to his "failure to comply with and/or ensure the appropriate implementation and/or operation of [MCSO's] policies and procedures pertaining to police training in the appropriate methods of pursuing, detaining, and arresting suspected citizens, and to adequately instruct, discipline and supervise [his] deputies, agents and/or employees." Such liability attaches to Sheriff Snyder individually under supervisory liability, as further explained below.

Defendants misconstrue the claims against the individual sheriff's deputies as containing official capacity claims against them. From the above, it is clear that Defendants Kimmel and Brown are named in this suit individually due to their actions in pursuing, assaulting, beating and/or encouraging, causing, and/or acquiescing in the drowning death of Mr. Miles. *See* Compl. at ¶ 34.

Defendants' motion to dismiss claims of Plaintiff's Complaint as containing duplicative official capacity claims must be denied: as discussed above, the only remaining official capacity claim in the Complaint is that against Sheriff Snyder as the promulgator of MCSO's polices, practices, and customs.

### The Law Concerning Excessive Force/Failure to Intervene favors Denying Defendants' Motion to Dismiss

The Fourth Amendment "governs a free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person." *Graham v. Connor*, 490 U.S. 386, 388 (1989). Defendants correctly point out that Fourth Amendment use of force claims are evaluated under an objective "reasonableness" inquiry that evaluates "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397, 109 S. Ct. 1865, 1872, 104 L. Ed. 2d 443 (1989). And Defendants do point out that "[e]ven when an officer is not a participant in the excessive force, he can still be liable if he fails to take reasonable steps to protect the victim." *Ledlow v. Givens,* 500 F. App'x 910, 914 (11th Cir. 2012) (per curiam) (citing *Skrtich v. Thornton,* 280 F.3d 1295, 1301 (11th Cir. 2002)).

However, in seeking a dismissal of the Complaint under this legal standard, Defendants ignore the facts pled within the four corners of the Complaint. Accepting

7

Plaintiff's allegations as true, *Hinshon,* 467 U.S., 73 (1984), Defendant Kimmel—despite initially exercising prudence by breaking off pursuit of Mr. Miles' vehicle—resumed the high speed chase on SW Indiantown Avenue before turning west onto SW Kanner Highway, Compl. at ¶¶ 14-16.  Defendant Brown joined this imprudent high speed chase after the deputies failed to deploy their tire deflation device. *Id.* at ¶ 17.  As a result of this ill-advised high speed chase, Mr. Miles lost control of the vehicle, *id.* at ¶ 18, after which Kimmel rammed into the already stalled vehicle and exited as if to pursue. *Id.* at ¶ 19-20.  Defendant Brown pulled up to the vehicle seconds behind Kimmel and exited his vehicle yelling a command with his gun drawn, *id.* at ¶ 21.  Thereafter, outside of radio and visual contact with Brown, Kimmel and other deputies waited by the vehicle and Kimmel turned off the audio to his body camera before he and other deputies entered the grassy area near the canal. *Id.* at ¶ 25. Kimmel's audio was still off and his video obscured until he and other deputies discussed an apparent footprint found along the canal. *Id.* at ¶ 26.  The Complaint states all of these facts in addition to the fact that:

> [An] independent forensic pathologist concluded that decedent TYRONE MILES, JR.'s cause of death was pulmonary edema and congestion from drowning, complicated by unexplained compressive-type blunt force injury of the upper and lower extremities suggesting homicidal drowning.

*Id.* at ¶ 32.

Ultimately, the Complaint alleges that either Defendants Kimmel, Brown, and Unknown Deputies "pursued, assaulted, and severely beat" Mr. Miles, *id.* at ¶ 49, or that their deliberate indifference to Mr. Miles' Fourth and Fourteenth Amendment rights led to Defendants' actions in using excessive force to pursue Mr. Miles and their omissions in failing to take reasonable steps to prevent him from entering the canal where he eventually drowned.

As pled, the Complaint therefore meets the legal standard to sustain the excessive force claims against the deputies for beating and drowning Mr. Miles, or excessive force claims for

their pursuit and subsequent failure to take reasonable steps to prevent Mr. Miles from drowning. Accordingly, the Court should deny Defendants' motion to dismiss.

## The Law Concerning Fourteenth Amendment (State Created Danger) favors Denying Defendants' Motion to Dismiss

As alluded to above, and as recognized by Defendants, an exception to there being no common law duty to rescue a stranger is where the individual needing rescue ***is in custody*** or ***where the state created the dangerous situation***. *See Est. of Ferguson,* 2010 WL 11558195, at *3 (citing *Willis v. Charter Township of Emmett,* 360 F.App'x. 596, 599 (6th Cir. 2010)). (Emphasis added.) Here, as alternatively pled in the Complaint, Defendants either had Mr. Miles in custody when then beat and drowned him following their pursuit, or they created the dangerous situation by initiating an imprudent high speed chase that caused Mr. Miles to lose control of the vehicle, and by ramming into his vehicle causing Mr. Miles to flee into the dangerous embankment by the St. Lucie Canal.

Defendants correctly point out that courts may "not use hindsight to judge the acts of police officers," and must instead consider "what [the officer(s)] knew (or reasonably should have known) at the time of the act." *Rodriguez v. Farrell,* 280 F.3d 1341, 1352–53 (11th Cir. 2002). However, the facts as pled in the Complaint reveal that despite initially choosing not to pursue the vehicle, Defendant Kimmel changed his mind and initiated an imprudent high speed chase, in which Defendant Brown joined. *See supra*. Moreover, Kimmel pursued Mr. Miles into the grassy area by the St. Lucie Canal "which he himself claims was too dangerous for him to venture into." Compl. at ¶ 58. Taken together, these allegations, accepted as true, reveal that Defendants Kimmel and Brown knew that a high speed pursuit was not called for but they engaged in it anyway. Kimmel also knew that the area near the canal was dangerous, as evidenced by his reticence to enter it, but he and other Defendants nevertheless herded Mr.

9

Miles into that area by their pursuit. These actions indeed shock the conscience and far exceed negligence to meet the threshold for a constitutional due process violation. *See Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 848–49 (1998) (internal citations omitted). Accordingly, the court should deny Defendants' motion to dismiss on that basis.

### The Body Camera Footage filed by Defendants does not Contradict Plaintiff's Allegations and is not Dispositive of Plaintiff's Claims

As stated in Plaintiff's Complaint, while body camera footage from several deputies that early morning is available, footage from critical moments is either obscured, Compl. at ¶ 20 and 26, or is without audio, *id.* at ¶ 25. Defendants do not refute that the video is incomplete in both regards, and under the appropriate motion to dismiss standard (as opposed to the improper motion for summary judgment standard advanced by Defendants), taking Plaintiff's allegations as true, the footage filed with the Court does not contradict the allegations in Plaintiff's Complaint because it does not tell the whole story.

In addition, even assuming the body camera footage is a complete and accurate record of everything that transpired that morning, this does not dispose of Plaintiff's claims. As indicated earlier, Plaintiff appropriately pled that, in the alternative to Defendants beating and drowning Mr. Miles, Defendants created a dangerous situation by initiating an imprudent high speed chase that caused Mr. Miles to lose control of the vehicle and, by ramming into his vehicle, caused Mr. Miles to flee into the dangerous grassy embankment of the St. Lucie Canal, leading to his drowning death. *See* Compl. at ¶ 34. Accordingly, the body camera footage filed by Defendants cannot contradict Plaintiff's alternative claims as pled,[3] and

---

[3] Importantly, even applying the motion for summary judgment standard, the independent forensic pathologist's conclusion that Mr. Miles died by homicidal drowning raises a genuine issue of material fact. Also, considering Plaintiff's alternative theory as pled, Defendants did not—nor can they—claim that the video evidence contradicts the fact that deputies Kimmel

Defendants' motion to dismiss must be denied.

## Defendants Kimmel and Brown are not Entitled to Qualified Immunity

"The doctrine of qualified immunity provides that 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Defendants rightly point out that "'[c]learly established law' should not be defined at a high level of generality" and that "the clearly established law must be particularized to the facts of the case", *White v. Pauly,* 580 U.S. 73, 79 (2017) (internal citations omitted). Nevertheless, "[b]ecause identifying factually similar cases may be difficult in the excessive force context," [courts may] "find fair warning in the law without also finding a factually identical case." *Corbitt v. Vickers*, 929 F.3d 1304, 1312 (11th Cir. 2019) (quoting *Lee v. Ferraro,* 284 F.3d 1188, 1198–99 (11th Cir. 2002)). Moreover, "[t]o invoke qualified immunity, the official first must establish that he was acting within the scope of his discretionary authority. *Case*, 555 F.3d 1317 at 1325 (citing *Bates v. Harvey*, 518 F.3d 1233, 1242 (11th Cir. 2008)).

Mr. Miles' constitutional right to not be beaten and drowned as pled in the complaint is clearly established in the Eleventh Circuit. *See Skrtich v. Thornton*, 280 F.3d 1295, 1303 (11th Cir. 2002), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009),

---

and Brown pursued Mr. Miles, that Kimmel rammed Mr. Miles' vehicle, or that he and Brown exited their patrol vehicles as soon as Mr. Miles' vehicle stopped in the embankment by the canal. These facts create a genuine issue of material fact regarding Defendant's deliberate indifference that would preclude any summary judgment in Defendants' favor.

(holding that officers in prison cell "extraction team" who electrically shocked and then beat non-resisting inmate, resulting in extensive injuries and a nine-day hospital stay, were not entitled to qualified immunity).

Furthermore, while Defendants Kimmel, Brown, and Unknown Deputies are duly authorized deputy sheriffs under color of state law, they ceased acting within the scope of their authority when they pursued, beat, and drowned Mr. Miles. Compl. at ¶¶ 24, 49, 56, 57, 68, 69, 80. Alternatively, these Defendants ceased acting within the scope of their authority when they created a dangerous situation by initiating an imprudent high speed chase that caused Mr. Miles to lose control of the vehicle and by ramming into his vehicle, causing him to flee into the St. Lucie Canal where he drowned. *Id.* at ¶¶ 34, 58. Therefore, as pled, the individual Defendants Kimmel, Brown, and Unknown Deputies cannot establish that they were acting within the scope of their discretionary authority and consequently cannot assert qualified immunity.

### The Complaint States a Proper Claim Against Sheriff Snyder in his Individual Capacity under the Doctrine of Supervisory Liability

Defendants correctly note that *respondeat superior* does not apply in Section 1983 cases. *Board of County Com'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397, 403 (1997). However, the Complaint attempts no such thing—the claim against Defendant Snyder is under the cognizable doctrine of supervisory liability.

"[S]upervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir. 2003). "The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on

notice of the need to correct the alleged deprivation, and he fails to do so." *Id.* (internal citations omitted.)  "Alternatively, the causal connection may be established when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights or when facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (internal citations omitted); *see also Thomas v. Bryant,* 614 F.3d 1288, n. 29 (11th Cir. 2010) (routine application of use-of-force policy without regard to an inmate's mental health status satisfied the causation requirement).

>Plaintiff sufficiently alleged that:
>
>The conduct of Defendant SNYDER in his **failure to train, supervise and/or discipline** his deputy sheriffs, agents and/or employees, was deliberately indifferent to the constitutional rights of all persons including, TYRONE MILES, JR., by among other things:
>
>>a. Engaging in ***a custom or policy of condoning alleged instances of police brutality without punishing his deputies, agents, and/or employees***, including, but not limited to, ***permitting and tolerating the practice of unjustified and unreasonable uses of excessive force*** by the deputies, agents, and/or employees of the Martin County Sheriff's Office under the color of law;
>>b. Engaging in ***a custom or policy to inadequately and improperly investigate citizen complaints of police misconduct***;
>>c. ***Failing to adequately and appropriately train, supervise, control, and monitor*** deputies, agents and/or employees of the Martin County Sheriff's Office in regards to the appropriate methods of pursuing, detaining, and arresting suspects;
>>d. ***Failing to adequately and appropriately train, supervise, control, and monitor*** the deputies, agents, and/or employees of the MARTIN County Sheriff's Office in regards to the proper use of force during the apprehension and arrest of suspected citizens including, TYRONE MILES, JR..

Compl. at ¶ 45 (emphasis added).  Plaintiff sufficiently pled Defendant Snyder's custom or

policy of condoning the brutality of his deputies, failing to investigate excessive force allegations, and failing to appropriately train, supervise, control, and monitor deputies in appropriate methods of pursuit, detention, and use of force against suspects.

The constitutional violations that occurred as a result of Defendant Snyder's supervisory liability are as sufficiently pled in Plaintiff's Complaint as they are tragically apparent. Tyrone Miles, Jr. was pursued, beaten and/or chased into the St. Lucie canal where he drowned, in violation of his Fourth Amendment right against unreasonable search and seizure. In violation of his Fourteenth Amendment rights, Mr. Miles was deprived of his life without due process of law. On these facts as pled, Plaintiff satisfies the requirement for a showing of an underlying constitutional violation to sustain a claim of supervisory liability. *See City of Los Angeles v. Heller,* 475 U.S. 796 (1986); *Knight ex rel. Kerr v. Miami-Dade County,* 856 F.3d 795, 821 (11th Cir. 2017). Accordingly, Plaintiff properly pled a Section 1983 claim against Sheriff Snyder under the doctrine of supervisory liability and the Court should deny Defendant's motion to dismiss.

## **Conclusion**

For the foregoing reasons, Plaintiff, the Estate of TYRONE MILES, JR., respectfully requests that this Court deny Defendants' motion to dismiss the Complaint. Alternatively, Plaintiff requests that if the Court grants Defendants' motion, Plaintiff be afforded the opportunity to amend the Complaint. *See Woldeab v. Dekalb Cty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018) (quoting *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988)). ("A district court's discretion to deny leave to amend a complaint is 'severely restricted' by Fed. R. Civ. P. 15, which stresses that courts should freely give leave to amend 'when justice so requires.'")

             Respectfully submitted,

             s/Byron B. Acosta
             Byron B. Acosta, Esq.
             Fla. Bar No. 1039193
             BYRON ACOSTA, P.A.
             8461 Lake Worth Rd Ste 466
             Lake Worth, FL 33467-2474
             Telephone: (561) 805-3580
             Facsimile:

             *Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

  I, **Byron A. Acosta**, certify that the foregoing was electronically filed with the Clerk of Court via the CM/ECF system, which will send an electronic copy to: **Summer M. Barranco**, Purdy, Jolly, Giuffreda, Barranco & Jisa, P.A., 2455 E. Sunrise Boulevard, Suite 1216, Fort Lauderdale, Florida 33304, Telephone: (954) 462-3200, Summer@purdylaw.com, this 22 day of March 2024.

                s/Byron B. Acosta, Esq.