**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 2:23-cv-14302-KMM

ESTATE OF TYRONE MILES, JR.,

Plaintiff,

v.

SHERIFF WILLIAM D. SNYDER, as Sheriff
of MARTIN COUNTY, et al.,

Defendants.
_______________________________________/

**ORDER**

THIS CAUSE came before the Court upon the Motion to Quash Service on "Unknown Deputies 1 – 10" ("Motion to Quash" or "MTQ") filed on behalf of Defendants "Unknown Deputies 1-10" (collectively, "Unnamed Defendants") (ECF No. 14), and the Motion to Dismiss Complaint filed by Defendants Sheriff William D. Snyder, as Sheriff of Martin County ("Sheriff Snyder"), Martin County Sheriff's Office (the "Sheriff's Office"), Samuel Kimmel ("Kimmel") individually and as Deputy Sheriff of the Sheriff's Office, and William Brown ("Brown") individually and as Deputy Sheriff of the Sheriff's Office (collectively, "Named Defendants") ("Motion to Dismiss" or "MTD," and together, the "Motions") (ECF No. 16). In connection with the Motion to Quash, Plaintiff Estate of Tyrone Miles, Jr. filed a response in opposition (the "MTQ Response" or "MTQ Resp.") (ECF No. 35), and Unnamed Defendants filed a reply in support ("MTQ Reply") (ECF No. 36). In connection with the Motion to Dismiss, Plaintiff filed a response in opposition ("MTD Response" or "MTD Resp.") (ECF No. 34), and Named Defendants filed a reply in support ("MTD Reply") (ECF No. 37). The Motions are now ripe for review. As set forth below, the Motion to Quash is GRANTED and the Motion to Dismiss is GRANTED.

## I. BACKGROUND[1]

Tyrone Miles, Sr. brings this action in his capacity as Personal Representative of the Estate of Tyrone Miles, Jr. ("Miles"). Compl. ¶ 2. On February 7, 2023, at or around 2:00 a.m., Kimmel in his marked Sheriff's Office vehicle turned on his police lights and attempted to initiate a traffic stop of the vehicle Miles was driving based on information about a stolen vehicle from the Miami Gardens Police Department. *Id.* ¶ 12. Miles did not stop, Kimmel reported that Miles's vehicle was the one that had been reported stolen, and a vehicle pursuit ensued as Miles took the Indiantown Avenue exit off of the I-95 Interstate Highway. *Id.* ¶ 13. There was a pause in the pursuit while Kimmel conferred with other deputies near SW Warfield Boulevard, where he saw Miles's vehicle and reinitiated the pursuit during which Miles crossed the road median and began driving north in southbound lanes of traffic. *Id.* ¶¶ 14–15. Kimmel continued the high-speed pursuit on SW Indiantown Avenue and then on to SW Kanner Highway, and when a tire deflation device failed to stop Miles's vehicle Brown joined Kimmel in the pursuit, also in a marked vehicle. *Id.* ¶¶ 16–17. Miles then lost control of his vehicle, veering off the road on the north side of SW Kanner Highway and crashing near the St. Lucie Canal. *Id.* ¶ 18.

After Miles had crashed, Kimmel used a "vehicle immobilization technique" that involved accelerating the push bumper of his car into the rear bumper of Miles's car and exited his vehicle seemingly to begin a foot chase. *Id.* ¶¶ 19–20. According to Plaintiff, Kimmel's body camera was obscured while he was on foot. *Id.* ¶ 20. Brown arrived seconds later and yelled a command with his gun drawn before also exiting his car to continue on foot, and Unnamed Defendants also

[1] The following facts are taken from Plaintiff's Complaint ("Compl.") (ECF No. 1) and are accepted as true for purposes of ruling on the Motion to Dismiss. *See MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.*, 40 F.4th 1295, 1302 (11th Cir. 2022). They are construed in a light most favorable to Plaintiff, the non-moving party.

attempted to apprehend Miles on foot in the area adjacent to the St. Lucie Canal. *Id.* ¶¶ 21–22. Plaintiff alleges that Miles posed no threat of immediate harm to any officers, and that their use of force in pursuit and apprehension was excessive. *Id.* ¶¶ 23–24. According to Plaintiff, the officers were not in visual or radio contact with Brown while Kimmel and Unnamed Defendants waited by Miles's abandoned vehicle with weapons drawn before Kimmel turned off his body camera's audio and entered the grassy area near the canal with Unnamed Defendants. *Id.* ¶ 25. Kimmel's body camera audio came back on, but the video feed continued to be obscured while Kimmel, Brown, and Unnamed Defendants discussed an apparent footprint found near the canal. *Id.* ¶ 26. The officers first entered the canal area at approximately 2:58 a.m., and the search for Miles was called off at approximately 5:00 a.m. *Id.* ¶¶ 25, 27.

Three days later on February 10, 2023 at approximately 11:00 a.m., Miles's dead body was retrieved from the St. Lucie Canal, and the Medical Examiner thereafter concluded the cause of his death was accidental drowning. *Id.* ¶¶ 28–29. However, an independent medical examination found that Miles sustained multiple blunt force traumas to his upper arms, wrists, right hand, left lower thigh, knee, and upper foreleg, as well as an acute spinal cord injury, pulmonary edema, and congestion. *Id.* ¶¶ 30–31. This independent medical examination found that Miles's cause of death was pulmonary edema and congestion from drowning, "complicated by" compressive-type blunt force injury of the upper and lower extremities, which Plaintiff alleges was interpreted to suggest homicidal drowning. *Id.* ¶ 32.

Plaintiff alleges that Miles died in the St. Lucie Canal due to the injuries caused by the aforementioned Defendants, in which they acted with deliberate indifference, and that Sheriff Snyder and the Sheriff's Office had a duty to ensure reasonable measures were taken to provide for the safety of people within Martin County as well as to train, supervise, control, monitor, and

otherwise ensure that the officers were acting lawfully in their duties. *Id.* ¶¶ 33–37. Plaintiff further alleges that Defendants' conduct constituted an unlawful search and seizure and violation of the due process rights of Miles, and that their conduct was the cause of his death. *Id.* ¶¶ 38–39. Plaintiff brings Count I against Sheriff Snyder, Count II against Kimmel, Count III against Brown, and Count IV against Unnamed Defendants, each for violation of the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. *Id.* ¶¶ 41–87.

Now before the Court is Unnamed Defendants' Motion to Quash, which seeks to quash service effectuated upon Unnamed Defendants as having been accepted in error by an administrative assistant to in-house counsel for Sheriff Snyder despite lacking authorization to do so. *See generally* MTQ. Also before the Court is Named Defendants' Motion to Dismiss seeking dismissal because the Sheriff's Office is not sui juris and therefore is incapable of being sued, the official capacity claims against individual Defendants are duplicative, the body camera footage does not support the Complaint's allegations, Kimmel and Brown are entitled to qualified immunity, and the Complaint fails to state a claim against Sheriff Snyder. *See generally* MTD.

## II. LEGAL STANDARD

### A. Service of Process

Rule 4 of the Federal Rules of Civil Procedure sets forth the procedural requirements for service of process. Rule 4(e) governs service upon an individual and Rule 4(e)(2)(C) allows service by "delivering a copy of [the summons and complaint] to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2)(C). "Statutes governing service of process are to be strictly construed to insure that a defendant receives notice of the proceedings; the burden of proving the validity of service of process is on the plaintiff." *Martin v. Salvatierra*, 233 F.R.D. 630, 631 (S.D. Fla. 2005). Once a defendant challenges service

of process, the plaintiff has the burden to demonstrate that that service was proper. *Hollander v. Wolf*, No. 09-80587-CIV, 2009 WL 3336012, at *3 (S.D. Fla. Oct. 14, 2009). "A signed return of service is *prima facie* evidence of proper service." *Id.* Once a plaintiff makes a *prima facie* showing of proper service, the burden shifts back to the defendant to demonstrate with clear and convincing evidence that service of process was insufficient. *Id.*

**B. Motion to Dismiss**

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8(a)(2) "is to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (internal citation and quotation marks omitted).

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for failing to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). This requirement "give[s] the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and alterations omitted). The court takes the plaintiff's factual allegations as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

A complaint must contain enough facts to plausibly allege the required elements. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295–96 (11th Cir. 2007). A pleading that offers "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting

*Twombly*, 550 U.S. at 555). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

## III. DISCUSSION

The Court first addresses the Motion to Quash before turning to the Motion to Dismiss.

### A. Motion to Quash

Bonnie M. Bouvier, an administrative assistant to Bernard Romero who is in-house counsel for Sheriff Snyder, filed an affidavit attached to the Motion to Quash explaining that she accepted service on behalf of Unnamed Defendants in error. MTQ at 1. As stated in the affidavit, at the time she believed she was authorized to accept service for Unnamed Defendants but since learned she is "not authorized to accept service for any deputy or deputies who are not specifically named in the summons as it cannot be determined whether they are still employed" by the Sheriff's Office. *See generally* (ECF No. 14-1); MTQ at 2. The Motion to Quash further argues that fictitious-party pleading is not permitted in federal court and therefore also seeks to dismiss on that basis. MTQ at 3. In response, Plaintiff directs the Court to a footnote in its MTD Response, which argues that fictitious-party pleading is permissible here because the Unnamed Defendants are identified with adequate specificity. MTQ Resp. at 1; MTD Resp. at 2 n.1.

Unnamed Defendants were not served in accordance with Federal Rule of Civil Procedure 4(e) because there was no authorized agent to accept service. Although a signed return of service is *prima facie* evidence of proper service, the Court finds there is clear and convincing evidence that service of process was insufficient in light of Bouvier's error.[2] Because Plaintiff does not

[2] There is no prejudice to Plaintiff here as it may reattempt service once the identities of Unnamed Defendants are known and it seeks Court authorization to join them in this action. *See Vielma v. Gruler*, 808 F. App'x 872, 881 (11th Cir. 2020) ("[A plaintiff] can sue the party he knows, conduct

provide any response to the argument that service was not properly effectuated, as substantiated by Bouvier's affidavit, the Court finds Plaintiff has waived this argument. *See Singh v. Royal Caribbean Cruises Ltd.*, 576 F. Supp. 3d 1166, 1192 (S.D. Fla. 2021) ("Generally, when a party fails to respond to an argument or otherwise address a claim, the Court deems such an argument or claim abandoned." (citation omitted)).

To the extent Plaintiff intended this limited argument to respond to both grounds raised in the Motion to Quash, the Court also finds that Unnamed Defendants were not described with adequate specificity as to make it possible for them to be identified such that the Sheriff's Office would have been able to determine whether it still employed those individuals. There is a limited exception to the general prohibition on fictitious pleading where "the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage.'" *Richardson v.* Johnson, 598 F.3d 734, 738 (11th Cir. 2010) (quoting *Dean v. Barber*, 951 F.2d 1210, 1215–16 (11th Cir. 1992)). However, the case that Plaintiff cites on this point rejects similarly vague descriptions of individuals' professional positions where they are just a few of many employees. *Compare Richardson*, 598 F.3d at 738 (affirming finding that John Doe identified only as "Guard" involved in subject incident "insufficient to identify the defendant among the many guards employed" at correctional institute), *with Dean*, 951 F.2d at 1216 (allowing fictitious pleading where unnamed defendant was identifiable as particular county chief deputy).

Additionally, Plaintiff in the footnote in question explains that "[w]ithout the benefit of the

---

discovery, and amend his pleadings or file a new case once he knows the name of other responsible parties."). Nevertheless, the Court is troubled by the Sheriff's Office apparent lack of clear communication to its employees regarding authorization to accept service. In addition to misleading litigants and process servers who reasonably rely on a defendant employee's statement of authority to accept service, the error also expended judicial and party resources in briefing and adjudicating the Motion to Quash which could have been avoided.

video subsequently filed by Defendants in this case identifying which footage belongs to which deputy, Plaintiff was specific as possible with the allegations against these deputies in the absence of anything that could identify the names of these deputies at the time the Complaint was filed." MTD Resp. at 2 n.1. That video footage has now been filed in this action. *See* (ECF No. 19) (the "Footage"). If Plaintiff is able to identify additional deputies based on the Footage, it is free to do so and properly seek Court authorization to join them in this action.

Accordingly, the Motion to Quash is GRANTED. The Unnamed Defendants also must be dismissed from the action because Plaintiff failed to identify them with specificity sufficient to enable service of process and otherwise overcome the general bar on fictitious pleading. *See Vielma*, 808 F. App'x at 880 ("This sue-first-and-sort-out-the-defendant-later approach is not how litigation works in federal court."). Accordingly, the Complaint is hereby DISMISSED as to Defendants Unknown Deputies 1-10.

**B. Motion to Dismiss**

The Court turns next to the Motion to Dismiss, which is brought on behalf of the Named Defendants and seeks dismissal of each Defendant on the separate grounds that: (1) the Sheriff's Office is not sui juris and therefore cannot be sued; (2) claims against individual Defendants in their official capacity are duplicative; (3) the Footage does not support the Complaint's allegations; (4) Defendants Kimmel and Brown are entitled to qualified immunity; and (5) the Complaint fails to state a claim against Sheriff Snyder. *See generally* MTD.[3]

---

[3] The Court notes it found the Motion to Dismiss briefing substantially difficult to follow, which likely stems in part from the fact that the Complaint's Counts are separated by Defendant rather than by legal theory or claim and is lacking in facts underlying each theory or claim. Specifically, each Count is asserted against a Defendant for violations of Miles's "constitutional rights under the fourth and fourteenth amendments and under 42 U.S.C. § 1983," and in substance encompasses many different alleged violations. *See generally* Compl. While Section 1983 allows for a civil action to lie against persons violating a plaintiff's rights in an official capacity, it is not a catch-all

Plaintiff concedes that the claims against the Sheriff's Office should be dismissed as duplicative of the claims asserted against Sheriff Snyder in his official capacity. MTD Resp. at 6 (collecting cases); *see also Navarro v. City of Riviera Beach*, 192 F. Supp. 3d 1353, 1361 (S.D. Fla. 2016). Accordingly, the Complaint is hereby DISMISSED as to the Sheriff's Office, and the Sheriff's Office is TERMINATED from this action as an improper party.

As to Named Defendants' other grounds for dismissal, Plaintiff argues in opposition that its official capacity claims against individual Defendants are not duplicative because those Defendants are separately liable on personal and official bases, the Footage is not dispositive of Plaintiff's claims, Defendants Kimmel and Brown are not entitled to qualified immunity because they acted outside the scope of their official authority, and the Complaint states a claim against Sheriff Snyder under the doctrine of supervisory liability. *See generally* MTD Resp. The Court addresses these arguments in turn.

**1. Claims Against Individual Defendants in Their Official Capacity**

Named Defendants seek to dismiss the claims against Defendants Kimmel and Brown in their official capacity because those claims are duplicative of the claim against Sheriff Snyder. MTD at 5. In response, Plaintiff asserts that Kimmel and Brown are only named in their individual capacities. MTD Resp. at 7. However, Named Defendants correctly note that the introductory paragraph of the Complaint states that Kimmel and Brown are sued "individually and in their

---

cause of action and Plaintiff is still required to adequately delineate the different bases of liability and the specific facts underlying each basis as explained in *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1320–21 (11th Cir. 2015). The Court does not find that the Complaint failed to put Defendants on notice of the claims alleged such that dismissal on the independent basis of shotgun pleading is warranted, as evidenced by the Parties' briefing on the Motion to Dismiss. Nevertheless, if Plaintiff chooses to file an amended pleading, such pleading will greatly benefit from clearer distinctions between and among the different theories of liability and what specific facts support each of those theories. The Parties are also invited to make use of organizational tools including numbered or lettered headings in future filings.

official capacities as Deputy Sheriffs of the MARTIN County Sheriff's Office." MTD Reply at 7; Compl. at 1. The Court cannot discern the basis for Plaintiff's assertion in its Response that Kimmel and Brown are not named in both their individual and official capacities. To the extent they are named in their official capacities, such claims are duplicative of Plaintiff's claim against Sheriff Snyder as representative of the Sheriff's Office.[4] *See Busby v. City of Orlando*, 931 F.2d 964, 776 (11th Cir. 1991). Accordingly, the Complaint is hereby DISMISSED as to Kimmel and Brown in their official capacities. Should Plaintiff file an amended pleading that continues to name Sheriff Snyder in his official capacity, it must only bring claims against Kimmel and Brown in their individual capacities.

**2. The Footage**

According to Named Defendants, the Footage entirely exculpates them because it shows that the deputies were unable to locate Miles on the night in question and therefore could not have injured him after he exited his vehicle and were also not deliberately indifferent to Miles's injuries because those injuries were not known to them. *See* MTD at 8–9. Plaintiff argues that the Footage is incomplete as to several moments where the video feed is obscured or the audio has cut out as to Kimmel, and even if it were complete the Footage does not contradict Plaintiff's alternative argument that Defendants created a dangerous situation in their high-speed chase and ramming of Miles's vehicle that caused him to flee on foot. *See* MTD Resp. at 10. Named Defendants also argue that while the Complaint's well-pled allegations would normally be accepted as true at this

[4] As discussed below, the Parties disagree regarding whether Sheriff Snyder was named only in his official or also his individual capacity. *See* MTD Reply at 9–10. The Court agrees that the Complaint is inconsistent as to the capacity in which Sheriff Snyder is named, and in any event the allegations against each Defendant do not necessarily match Plaintiff's initial statement in the Complaint as to the capacities in which each Defendant is sued. *See* Compl. at 1. Plaintiff must rectify this issue throughout if it chooses to file an amended pleading.

dismissal stage, that is not so here where the Footage disproves the allegations. MTD Reply at 2.

The Footage is properly considered herein through the incorporation-by-reference doctrine. *See Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024) ("[W]hen resolving a motion to dismiss . . . a court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged."). The incorporation-by-reference doctrine has been applied to police body camera footage. *Baker v. City of Madison*, 67 F.4th 1268, 1277–78 (11th Cir. 2023). The Eleventh Circuit has explained that where "a video is clear and obviously contradicts the plaintiff's alleged facts, [courts] accept the video's depiction instead of the complaint's account . . . and view the facts in the light depicted by the video." *Baker*, 67 F.4th at 1277–78 (citing *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010), *Scott v. Harris*, 550 U.S. 372, 381 (2007)). If there are ambiguities in the video footage, including issues such as a technical failure of the video and accompanying audio streams or an incomplete angle, "courts must construe all ambiguities in the video footage in favor of the plaintiff" as is the case in written pleadings. *Id.* at 1277 (citing *Speaker v. U.S. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1379 (11th Cir. 2010)).

There is no explanation provided for the visual and audio disruptions in the Footage, and these are exactly the kinds of ambiguity that must be construed in Plaintiff's favor here. *See Baker*, 67 F.4th at 1277–78. Named Defendants contend that the mosaic of different officers' body camera feeds shows the positions of Kimmel and Brown such that they are not unaccounted for, as Plaintiff suggests, and that despite his own camera being obscured he can be seen and heard at relevant times. MTD Resp. at 10; MTD Reply at 5. It may well be shown that Miles was never actually located and therefore never in Defendants' custody such that his Fourth Amendment right

was not violated. *See* MTD Reply at 5; *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998) (explaining "police pursuit in attempting to seize a person does not amount to a 'seizure' within the meaning of the Fourth Amendment").[5] But a mosaic of video feeds from other angles is not a conclusive substitute for the obscured video, which may have been filmed from a perspective not visible to other officers, and moreover it does not resolve the lack of audio feed if there was a period where the officers were beyond radio or visual contact with one another as alleged. *See* Compl. ¶ 25. Accordingly, the Court cannot find that Plaintiff's claim is precluded at this stage by the undisputedly incomplete Footage.

### 3. Qualified Immunity as to Defendants Kimmel and Brown

Named Defendants next argue that Kimmel and Brown are entitled to qualified immunity, and that Plaintiff has failed to plead facts that would overcome this defense. MTD at 10–12. Plaintiff argues that it has clearly established a violation of Miles's constitutional rights, and that Defendants' actions alleged in the Complaint could not have been within the scope of their authority. MTD Resp. at 11–12. The doctrine of qualified immunity is meant to protect government officials from "suit in their individual capacities for discretionary actions in which they engage in the course of their duties." *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018). Qualified immunity is available as a defense where an official shows the alleged acts were taken

[5] Regarding whether Miles was in Defendants' custody, Named Defendants argue that allegations "upon information and belief" are "insufficient to satisfy a plaintiff's pleading burden." MTD at 4; MTD Reply at 5. This is somewhat of an overstatement of the law, which is that such allegations do not have to be taken as true where they lack corroborating facts alleged. *See Smith v. City of Sumiton*, 578 F. App'x 933, 936 n.4 (11th Cir. 2014); *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013). It is also difficult to assess this argument where Named Defendants do not point to any specific allegations. Further, Named Defendants hinge their argument regarding custody on the Footage that the Court found not dispositive for the reasons discussed above. Plaintiff has alleged a theory that Miles was beaten by Defendants based on the other facts alleged not on information and belief, which is sufficient to state a claim at the pleading stage. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 551, 557.

"within the scope of his discretionary authority" at the time. *Watkins v. Davis*, 156 F.4th 1084, 1097 (11th Cir. 2025). The burden then shifts to a plaintiff to show both that the official's act violated a constitutionally protected right, and that such right was "clearly established at the time of the misconduct." *Id.*; *Nute v. White*, 152 F.4th 1311, 1317–22 (11th Cir. 2025). As relevant here, "a police officer is entitled to qualified immunity if a reasonable police officer could have believed his or her actions were lawful in light of clearly established law and the information possessed by the officer at the time the conduct occurred." *Jackson v. Sauls*, 206 F.3d 1156, 1165 (11th Cir. 2000) (citation omitted).

Named Defendants have satisfied their burden as to the first requirement that Kimmel and Brown were acting within their discretionary authority. The inquiry here is not "whether it was within the defendant's authority to commit the allegedly illegal act," but rather "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Donald v. Norris*, 131 F.4th 1255, 1263 (11th Cir. 2025) (internal quotations and citations omitted). As alleged, the actions of Kimmel and Brown were undertaken in furtherance of their professional duties in an attempt to apprehend Miles following information received from the Miami Gardens Police Department about a stolen vehicle. Compl. ¶¶ 7–9, 12, 35. Plaintiff advances several ways that Kimmel and Brown "ceased acting within the scope of their authority." MTD Resp. at 12. However, this argument is not substantiated by the allegations in the Complaint when applying the foregoing legal standard, as at all relevant times Kimmel and Brown were "clothed with [their] full law enforcement powers and therefore acting within [their] discretionary authority." *See Nute*, 152 F.4th at 1318.

The burden then shifts to Plaintiff to show that Kimmel and Brown violated a clearly established constitutional right. Plaintiff argues two alternative ways that such violation may have

occurred, first in the alleged beating and drowning, and second in initiating an "imprudent high speed chase" that caused Miles to lose control of his vehicle and by ramming into the back of that vehicle. MTD Resp. at 12. The Parties do not dispute that a "law enforcement officer cannot beat a non-resisting arrestee," and that such beating would constitute a violation. MTD Reply at 8; *Skrtich v. Thornton*, 280 F.3d 1295, 1303 (11th Cir. 2002), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). Named Defendants, however, argue that the Footage precludes a finding that such beating occurred. MTD Reply at 8.

To the extent Named Defendants argue that the Footage is dispositive of Plaintiff's claim that Miles was beaten and therefore qualified immunity applies, the Court rejects the same given its finding above that the Footage is incomplete. However, that is not the end of the qualified immunity inquiry. Plaintiff still bears the burden of showing that a clearly established constitutional right was violated, not merely pointing out deficiencies in the evidence produced by Named Defendants. While the Footage does not show that a beating did not occur, neither does it show that such a beating *did* occur. The only other evidence Plaintiff puts forth on this point is the independent forensic pathologist's conclusion that Miles sustained "unexplained compressive-type blunt force injury of the upper and lower extremities suggesting homicidal drowning." MTD Resp. at 8; Compl. ¶ 32. Even accepting as true that such injuries did occur, Plaintiff has still failed to allege facts connecting such injuries to the actions of Defendants. While Named Defendants primarily focus on the Footage in arguing this point, they elsewhere correctly argue that there are other explanations for the unexplained compressive-type injuries, including Miles's fall down the canal's steep embankment once he exited his vehicle. MTD Reply at 7 n.10. Accordingly, Plaintiff has failed to allege facts that connect the actions of Kimmel and Brown to any injuries sustained by Miles sufficient to overcome the defense of qualified immunity.

Although not always clearly stated, Plaintiff seems to assert an alternative argument that Defendants were reckless or at least "imprudent" in their continuation of a high-speed pursuit of Miles and ramming his car that caused him to enter the St. Lucie Canal. *See* MTD Resp. at 12; Compl. ¶¶ 16–17, 34, 58. Miles continually sped away from officers in his vehicle, entering a southbound lane while going north and eventually losing control of the vehicle. *Id.* ¶¶ 13–18. Kimmel and eventually other offices continued their pursuit in the hopes of apprehending Miles, based on information about a stolen vehicle. *Id.* ¶¶ 12–13.

There is no contention that the information that the car was stolen was incorrect, or that Kimmel did not sincerely believe it to be correct such that this was the motivation for his pursuit, and such action is within Kimmel and Brown's discretionary authority as discussed above. Plaintiff does not cite any case law asserting that any clearly established constitutional rights were violated under this theory, and the Court is not aware of any. *See Cnty. of Sacramento*, 523 U.S. at 834 (explaining high-speed chases "with no intent to harm suspects physically or to worsen their legal plight do not give rise to substantive due process liability"); *White v. Polk Cnty.*, 207 F. App'x 977, 978 (11th Cir. 2006) (requiring a showing of "a purpose to cause harm unrelated to the legitimate object of arrest" (citation omitted)). Accordingly, the Court finds that Kimmel and Brown are entitled to qualified immunity and therefore the Complaint is DISMISSED as to them.

**4. Sheriff Snyder's Liability Under Section 1983**

Lastly, Named Defendants argue that the doctrine of respondeat superior does not apply under 42 U.S.C. § 1983, and therefore the Complaint has not stated a cognizable claim against Sheriff Snyder. MTD at 12–13; *see also Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997). Plaintiff agrees that respondeat superior is not cognizable under Section 1983 but argues that the Complaint in fact alleges liability under the doctrine of supervisory

liability, which is cognizable under Section 1983. *See* MTD Resp. at 12.

As to official capacity liability under *Monell v. Department of Social Services*, the seminal case on this issue, a governmental entity can only be sued under Section 1983 "when the execution of a government's policy or custom . . . inflicts the injury." 436 U.S. 658, 694 (1978). To adequately state such a claim, a plaintiff must plead: "(1) that their constitutional rights were violated, (2) the municipality had a 'custom or policy that constituted deliberate indifference to that constitutional right,' and (3) that policy or custom caused the violation." *Wade v. City of Miami Beach*, 565 F. Supp. 3d 1248, 1251 (S.D. Fla. 2021) (quoting *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)). A "custom or policy" must be shown through either "an officially promulgated policy or an unofficial custom or practice shown through the repeated acts of a final policymaker for the [governmental entity]." *Lopez v. City of Opa-Locka*, No. 24-cv-22076, 2024 WL 4930610, at *2 (S.D. Fla. Dec. 2, 2024) (cleaned up and citation omitted). A qualifying custom "must be a widespread practice that is so permanent and well settled as to have the force of law." *Id.* at *3 (citation omitted). To plead "deliberate indifference," a plaintiff must allege that "the municipality knew of a need to discipline, train, and/or supervise in a particular area and made a deliberate choice not to take any action." *Id.* at *2 (cleaned up and citation omitted).

As to Sheriff Snyder's individual capacity, supervisory liability is a "demanding" standard where without a supervisor's "personal participation in a constitutional violation, a supervisor is liable only if the plaintiff can show that the supervising official's actions caused the alleged violation." *Bridges v. Poe*, __ F.4th __, 2025 WL 2942888, at *7 (11th Cir. Oct. 17, 2025). This can be accomplished in various ways. One way is "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Braddy v. Fla. Dep't of Lab. & Employment Sec'y*, 133 F.3d 797, 802 (11th Cir. 1998)

(quoting *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990)). Another way is through showing that "a supervisor's custom or policy reflected deliberate indifference to the plaintiff's constitutional rights," which in turn requires a "subjective awareness of a substantial risk of serious harm," or facts to support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Bridges*, 2025 WL 2942888, at *7 (citing *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 957 (11th Cir. 2019), *Goodman v. Kimbrough*, 718 F.3d 1325, 1334 (11th Cir. 2013)); *Keith v. DeKalb Cnty., Ga.*, 749 F.3d 1034, 1048 (11th Cir. 2014). Yet another way this can be accomplished is through showing that the "absence of a policy led to a violation of constitutional rights." *Piazza*, 923 F.3d at 957 (citing *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991) (emphasis omitted)). Any route requires a showing of multiple incidents or "multiple reports of prior misconduct by a particular employee," because widespread abuse must be "obvious, flagrant, rampant, and of continued duration," and one instance "is insufficient to prove a policy or custom even when the incident involves several [subordinates]." *Braddy*, 133 F.3d at 802; *Piazza*, 923 F.3d at 957 (quoting *Craig v. Floyd Cnty.*, 643 F.3d 1306, 1312 (11th Cir. 2011)).

Here, the Complaint fails to state a claim against Sheriff Snyder. Plaintiff claims that Sheriff Snyder engaged in a "custom or policy of condoning alleged instances of police brutality without punishing his deputies, agents, and/or employees," a "custom or policy to inadequately and improperly investigate citizen complaints of police misconduct," a failure to "adequately and appropriately train, supervise, control, and monitor" subordinates in "methods of pursuing, detaining, and arresting suspects" or the "proper use of force during the apprehension and arrest of suspected citizens." *See* MTD Resp. at 13. These allegations are wholly conclusory and insufficient under either theory of official or personal liability.

Applying *Monell*, the Complaint is silent as to an official policy or an unofficial widespread custom that would have resulted in the alleged violation beyond two conclusory allegations that a custom or policy existed and that there was a failure to train, supervise, control, and monitor subordinates, with no facts alleged as to any incidents or actions outside of the incident involving Miles. *See* Compl. ¶¶ 45(a)–(d). Plaintiff is required to allege a policy, custom, and/or notice of a need to discipline, train, or supervise regarding a particular issue to prevail on a Section 1983 claim against a municipal party at the dismissal stage. *See Monell*, 436 U.S. at 694; *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1329 (11th Cir. 2015) (rejecting conclusory allegation of sheriff's office's notice of need to "promulgate, implement, and/or oversee" use of force policies where no supporting facts alleged and claim arose from "a single incident and the actions of two deputies"); *see also Lopez*, 2024 WL 4930610, at *2 (requiring "officially promulgated policy" or "unofficial custom or practice shown through the repeated acts of a final policymaker"). Plaintiff has not pled allegations that would satisfy these standards against Sheriff Snyder in his official capacity.

As to Sheriff Snyder's personal liability, Plaintiff's argument rests on the supervisory liability standard discussed above. *See* MTD Resp. at 12–14. While Plaintiff contends that it has pled "an underlying constitutional violation to sustain a claim of supervisory liability," the existence of a constitutional violation is not all that is necessary to state a supervisory liability claim. *Id.* at 14. Once again, the Complaint fails to allege any instances of purported misconduct, constitutional violations, or similar incidents outside of what occurred with Miles as would be required to show that routine violations were occurring such that Sheriff Snyder was on notice thereof and directed or failed to stop the same. *See Bridges*, 2025 WL 2942888, at *7; *Thomas v. Bryant*, 614 F.3d 1288, 1317 n.29 (11th Cir. 2010) (finding sufficient allegations of prison

warden's "direct authorization of all uses of force" and "*routine* application of [institution's] non-spontaneous use-of-force policy" sufficient (emphasis added)). It is fundamentally problematic to this theory that there are no policies or customs alleged that would make reasonable any inference that Sheriff Snyder could have been deliberately indifferent to a foreseeable harm to citizens.[6] *See Piazza*, 923 F.3d at 958 (rejecting supervisory liability claim due to conclusory allegations of indifference "pursuant to certain policies or customs—without alleging any facts concerning those policies or customs"). Plaintiff has not sufficiently alleged facts that could support a finding of personal liability as to Sheriff Snyder.

Accordingly, the Complaint must be dismissed as to Sheriff Snyder for failure to state a claim against him in his official or personal capacities. Should Plaintiff file an amended pleading that continues to name Sheriff Snyder, in addition to addressing the foregoing deficiencies it must also explicitly state the capacities in which Sheriff Snyder is named, and tailor its allegations to the requirements of the particular capacity asserted.

## IV. CONCLUSION

UPON CONSIDERATION of the Motions, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that Unnamed Defendant's Motion to Quash (ECF No. 14) is GRANTED. Named Defendants' Motion to Dismiss Complaint (ECF No. 16) is GRANTED. The Complaint (ECF No. 1) is DISMISSED WITHOUT PREJUDICE. The Court will grant Plaintiff's request in the alternative for leave to amend as it does not find such amendment would be futile at this time. MTD Resp. at 14.

---

[6] Plaintiff does not contend that Sheriff Snyder was personally involved or participated in Miles's pursuit and the ensuing disputed events.

Accordingly, if Plaintiff wishes to file an amended complaint that addresses the aforementioned deficiencies, it may do so within twenty-one (21) days of this Order.

DONE AND ORDERED in Chambers at Miami, Florida, this 24th day of November, 2025.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c: All counsel of record